THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AIXA ROSA TONGE, et al.,<br><br> Plaintiffs,<br><br> v.<br><br>DOCTORS' CENTER HOSPITAL, SAN JUAN, INC., et al.,<br><br>Defendants; third-party Plaintiff<br><br>v.<br><br>GALOPE ANESTHESIA SERVICES, PSC; DR. RICARDO GALÁN-VÁZQUEZ, INDIVIDUALLY AND AS MEDICAL DIRECTOR OF GALOPE ANESTHESIA SERVICES, PSC; CONTINENTAL CASUALTY COMPANY; DR. JORGE L. LÓPEZ; SIMED; JOHN DOE, INSURANCE COMPANIES X, Y, AND Z.<br><br>Third-party defendants | Civil No. 18-1916 (ADC) |

## <u>OPINION AND ORDER</u>

Before the Court are third-party defendants Galope Anesthesia Services, PSC ("Galope") and Dr. Ricardo Galán-Vázquez's ("Dr. Galán-Vázquez") motion to dismiss at **ECF No. 45**, third-party defendant Dr. Jorge L. López's ("Dr. Jorge López") motion to dismiss at **ECF No. 46**, and third-party defendant Continental Casualty Company's ("CCC") motion to dismiss at **ECF No. 47**. Third-party plaintiff Doctors' Center Hospital San Juan, Inc. ("DCH"), filed its responses

thereto at **ECF Nos. 51, 52, 53**. third-party defendants replied at **ECF Nos. 54, 55, 56**. DCH did not request leave to file a sur-reply.

For the reasons below, the motion to dismiss at **ECF No. 45** is hereby **GRANTED IN PART**. The motions to dismiss at **ECF Nos. 46, 47** are **GRANTED**.

## I.    Procedural Background

On November 29, 2018, Aixa Rosa-Tonge, Hilda Tonge-Landrón and Jorge Tonge-Landrón ("plaintiffs") filed the original complaint, at **ECF No. 1**, against DCH, requesting damages for "medical and hospital malpractice." *See* **ECF No. 28** at 4. Plaintiffs allege that Marissa Tonge-Landrón[1] ("Marissa Tonge-Landrón" or the "patient") went into respiratory arrest after a May 26, 2017 surgery, to which medical personnel failed to timely respond, thereby causing Marissa Tongue-Landrón to sustain permanent brain damage. **ECF No. 1** at 2-5. Plaintiffs assert they served DCH with "an extrajudicial claim" to toll the applicable one-year statute of limitations. **ECF No. 1** at 8. Plaintiff did not send an "extrajudicial claim" to third-party defendants.

DCH filed its answer to the complaint. **ECF No. 8**. Notwithstanding, due to the unfortunate death of Marissa Tonge-Landrón on January 21, 2019, the Court granted plaintiffs' motion to file an amended complaint, docketed on March 20, 2019. **ECF No. 11**. Plaintiffs *added* claims arising out of Marissa Tonge-Landrón's death, including increasing the amounts of compensatory damages to account for their additional suffering.

---

[1] Mother of plaintiff Aixa Rosa-Tonge and sibling of plaintiffs Hilda Tonge-Landrón and Jorge Tonge-Landrón.

On March 26, 2019, DCH filed an informative motion and requested an extension of time to join other parties in light of plaintiffs' amended complaint. **ECF No. 13**. DCH filed its answer to the amended complaint on April 5, 2019. **ECF No. 16**. On November 18, 2019, DCH filed a motion for leave to file a third-party complaint, appending its proposed complaint. The Court granted the request. **ECF Nos. 25**, **26**. However, on February 26, 2020, DCH did not the file the same third-party complaint submitted to the Court in November, but rather an amended third-party complaint which included, for the first time, Dr. Jorge López as a third-party defendant joint tortfeasor. **ECF No. 28**.

### A.      Galope and Dr. Galán-Vázquez's motion to dismiss

Third-party defendants Galope and Dr. Galán-Vázquez filed a motion to dismiss at **ECF No. 45**. They argue that the amended third-party complaint fails to state a claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). They also argue that the amended third-party complaint is time-barred under Puerto Rico law. *Id*. Making reference to Puerto Rico Supreme Court opinions, Galope and Dr. Galán-Vázquez sustain that, "[b]eing uncontested that plaintiffs' claim against the appearing defendants is time-barred, third-party Plaintiffs may not bring their contribution claim against the appearing parties via third party practice." *Id*. at 12.

DCH responded that Galope and Dr. Galán-Vázquez calculated the statute of limitations from the wrong starting point. **ECF No. 53**. DCH claims that the relevant date is not the "date of the initial injury" on "May 26, 2017," but the date of Marissa Tonge-Landrón's death on January 21, 2019. *Id*. at 1-2. DCH's argument is grounded on the notion that Marissa Tonge-

Landrón's death triggered the filing of plaintiffs' amended complaint, which, according to DCH, "transformed the nature of the cause of action from a straight medical malpractice case, to a claim for wrongful death." *Id*. at 2. In other words, plaintiffs' "inclusion of the wrongful death claim gave rise to a new limitations clock on Plaintiffs' wrongful-death action, which began to run on the date of their injury, that is on January 21, 2019 - the date of Tonge's death." *Id*. at 9. DCH also sustains that the statute of limitation was tolled because there is "perfect solidarity" among the third-party litigants. *Id*.

Finally, Galope and Dr. Galán-Vázquez filed a motion at **ECF No. 56** for joinder in CCC's reply at **ECF No. 55**, **55-1**. Specifically, after stating their insured-insurer relationship with CCC, Galope and Dr. Galán-Vázquez "adopt[ed] by reference all of the arguments presented by [their] insurer [CCC] in relation to third party plaintiffs' response to our motion to dismiss, except obviously as to those pertaining to the insurance policy itself." **ECF No. 56** at 2.

DCH did not move for leave to file a sur-reply.

**B.    Dr. Jorge López's motion to dismiss**

Dr. Jorge López similarly argues that the amended third-party complaint is time barred because DCH filed it more than a year after plaintiffs' claim accrued on May 27, 2017. **ECF No. 46** at 4. Dr. Jorge López notes that plaintiffs did not bring a claim against him in their original or amended complaints and DCH does not argue that any possible claims against him were tolled. Accordingly, Dr. Jorge López concludes, DCH's third-party claims against him should be dismissed as untimely.

DCH responds with the same arguments stated in its response to Galope and Dr. Galán-Vázquez, focusing on Marissa Tonge's January 21, 2019 death as the proper statute of limitations trigger. **ECF No. 52.** DCH also argues that "perfect solidarity" exists between Dr. Jorge López and DCH pursuant to a professional service agreement. *Id*. at 10. Because of this contractual relationship, DCH concludes, DCH was not under the time constraints of the one-year tort statute of limitation. *Id*.

Dr. Jorge López replied, rejecting DCH's interpretation of plaintiffs' amended complaint as having recharacterized their claims as purely "wrongful death." **ECF No. 52** at 4. Even if that were the case, Dr. Jorge López sustains, DCH's amended third-party complaint is still time barred because plaintiffs' claims against him, if any, would likewise be time barred. *Id*.

DCH did not seek leave to file a sur-reply to Dr. Jorge López's reply.

C.      **CCC's motion to dismiss**

CCC filed a motion to dismiss the amended third-party complaint asserting, (1) it is not "a joint tortfeasor to the action and has no contractual relation with DCH," (2) DCH "lacks a substantive right under the Insurance Code of Puerto Rico or a substantive right of indemnity or contribution against CCC," thereby lacking standing to bring its claim, and (3), akin to the arguments above, DCH's filing is barred by the statute of limitations. **ECF No. 47** at 2.

DCH filed a response, rehashing the same statute of limitations arguments addressed above. **ECF No. 51.** Additionally, DCH argues that it has standing to file a claim against CCC "by virtue of the policy issued by CCC" whereby CCC "is contractually obligated to provide

defense to said insureds, and also to pay for any damages that its insureds become legally obligated to pay within the policy's limits." *Id*. at 8. DCH concludes that its amended third-party complaint "is not separate and distinct from the main action and is dependent on the resolution of the principal complaint." *Id*. at 9.

CCC replied at **ECF No. 55**, but DCH did not move for leave to file a sur-reply.

## II.    Legal Standard

**Fed. R. Civ. P. 12(b)(6)**

Pursuant to *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), Fed. R. Civ. P. 12(b)(6) requires a plaintiff to "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). Thus, a plaintiff must present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the pleading requirements of Fed. R. Civ. P. 8(a). *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009). When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the context based "plausibility" standard established by *Twombly*, 550 U.S. at 544, and *Iqbal*, 556 U.S. 662. A plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal*, 556 U.S. at 677-679. In analyzing this standard, the Court must "accept as true all of the allegations contained in a complaint [,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal*, at 678. Yet, the Court is not bound to "accept as true legal conclusions from the complaint  or 'naked assertion[s]' devoid of 'further factual

enhancement.'" *Maldonado v. Fontanés*, 568 F.3d 263, 268 (1st Cir. 2009) (quoting *Iqbal*, at 678).

Next, the Court must determine whether, based upon all assertions that were not discarded

under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, at 679.

Finally, the Court notes that "[a]ffirmative defenses, such as the statute of limitations, may be

raised in a motion to dismiss under [Rule 12(b)(6)], provided that 'the facts establishing the

defense [are] clear on the face of the plaintiff's pleadings.'" *Trans–Spec Truck Serv., Inc. v.

Caterpillar, Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) (quoting *Blackstone Realty LLC v. FDIC*, 244 F.3d

193, 197 (1st Cir. 2001)). "Where the dates included in the complaint  show that the limitations

period has been exceeded and the complaint  fails to sketch a factual predicate that would

warrant the application of either a different statute of limitations period or equitable estoppel,

dismissal is appropriate." *Id.* (citation and internal quotation marks omitted). *See Concepción-

Torres v. Puerto Rico*, 45 F. Supp. 3d 170, 172 (D.P.R. 2014).

**Fed. R. Civ. P. 14(a)**

Rule 14(a) of the Federal Rules of Civil Procedure provides that "a defending party may,

as third-party plaintiff, serve a summons and complaint  on a nonparty who is or may be liable

to it for all or part of the claim against it," dependent upon certain timing requirements. *See also*

3 Moore's Federal Practice § 14.02, p. 14-10; *see Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 389,

393 (1st Cir. 1999) (Rule 14 (a) "contemplat[es] the availability of third-party practice when a

non-party is or may be liable for all or part of the plaintiff's claim against the defendant.")

(internal quotation marks omitted). "From the clear language of this rule it follows that a third-

party plaintiff is procedurally obliged to predicate its claims upon secondary or derivative liability." *Zurich Am. Ins. v. Lord Elec. Co. of Puerto Rico*, 828 F. Supp. 2d 462, 468 (D.P.R. 2011).

"Almost always, this deflection will be based on an assertion that the absentee owes the defending party a duty of contribution or indemnity." *Bernardi Ortiz v. Cybex Int'l, Inc.*, 345 F. Supp.3d 107, 117–18 (D.P.R. 2018); *see López de Robinson v. United States*, 162 F.R.D. 256, 258 (D.P.R.1995) ("A contractual right of indemnification, or a[ ] right [to] contribution between joint tortfeasors are [...] rights under substantive law which allow a[ ]third-party plaintiff to pass along all or a portion of his liability to third-party defendant."). Notably, "[a] third-party plaintiff must allege a direct line of liability between itself and the third-party defendant independent of that between the original plaintiff and defendant." *Arroyo López v. Hosp. Dr. Dominguez, Inc.*, 262 F.R.D. 93, 95 (D.P.R. 2009); *see Afunday Charters, Inc. v. Spencer Yachts Inc.*, No. CV 16- 3141 (GAG), 2018 WL 10878066, at *3 (D.P.R. Dec. 18, 2018); *López de Robinson*, at 258.

"Although this rule does not explicitly provide for a motion to dismiss third-party claims, '[t]he federal courts have entertained both motions to dismiss and to strike and have not drawn distinctions between them.'" *Zurich Am. Ins.*, 828 F. Supp. 2d at 467 (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1460 (3d ed. 2011)). "[I]n determining whether a third-party complaint was properly brought under Rule 14, a court looks to whether the pleadings provide a basis for a third-party defendant's liability to the defendant/third-party plaintiff." *Arroyo López*, 262 F.R.D. at 95.

### III.    Discussion

All three pending motions to dismiss claim that the amended third-party complaint is time barred. Likewise, all three responses filed by DCH raise the exact same counter arguments. **ECF Nos. 51, 52, 53**. Because the timeliness of the amended third-party complaint is jurisdictional, the Court will address the parties' time bar arguments and briefings first.

DCH asserts that the Court must "evaluate and adjudicate" the motions to dismiss in light of the amended complaint and the amended third-party complaint. *See* **ECF Nos. 51** at 2, 4; 15, **52** at 4, **53** at 4-5. Pursuant to this standard, DCH sustains, third-party defendants' time bar arguments should be denied for two reasons. First, DCH argues that plaintiffs' extrajudicial claim against DCH also tolled the statute of limitation for claims against third-party defendants. DCH contends that the reason why plaintiffs' extrajudicial claim against DCH also extended to third-party defendants is because "perfect solidarity" exists between DCH and third-party defendants under a professional services agreement executed between them.

Second, DCH argues that plaintiffs' amended complaint "transformed" plaintiffs' "initial claim for medical malpractice… into a wrongful death action," thereby starting a new one-year statute of limitation (**ECF No. 53** at 9).[2] The Court will address each argument in turn.

---

[2] CCC contends that, as insurer of the third-party defendants, it is not a party to the professional services agreement and, thus, cannot be considered under the "perfect solidarity" umbrella. **ECF No. 55 at 7**.

### A.    "Perfect solidarity"[3]

DCH argues that plaintiffs' tolling of the statute of limitation against DCH on May 24, 2018, via extrajudicial claim automatically interrupted the statute of limitation for DCH's third-party claims against third-party defendants. This argument is based on DCH's contention that "perfect solidarity" exists between DCH and third-party defendants. Specifically, DCH posits, "Galope and/or Dr. Galán were contractually obligated to **hold harmless and indemnify** [DCH] on account of personal injuries, including death which result from the Contractor's negligence and/or that of its employees, independent contractors and/or physicians." **ECF Nos. 51** at 8-9, **52** at 12, **53** at 4 (emphasis added).

Pursuant to *Fraguada-Bonilla v. Hospital Auxilio Mutuo*, 186 D.P.R. 365 (2012), Puerto Rico law distinguishes between two types of "solidarity": "perfect" and "imperfect." Tort actions fall under the imperfect category. The most notable consequence of imperfect solidarity is what the *Fraguada-Bonilla* Court described as the "secondary effect," referring to the disruptive effect of a statute of limitation. In cases of imperfect solidarity, "the timely filing of a complaint against an alleged joint tortfeasor does not toll the statute of limitations against the rest of the alleged joint tortfeasors." *Rivera-Carrasquillo v. Centro Ecuestre Madrigal, Inc.*, 812 F.3d 213, n.4 (1st Cir. 2016) (internal quotation marks omitted) (citing *Fraguada Bonilla*). However, if "perfect solidarity" exists among co-defendants, "interruptive acts do not operate individually." *Ramírez–Ortiz v.*

---

[3] "Solidarity" stems from the "concept of joint… liability.'" *Ramírez-Ortiz v. Corporación Del Centro Cardiovascular De Puerto Rico y Del Caribe*, 994 F. Supp. 2d 218, 222 (D.P.R. 2014) (citing *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596, 605 (1992)).

*Corporación Del Centro Cardiovascular De P.R. y Del Caribe,* 994 F.Supp.2d at 223; *see Kenyon v. González-Del Río*, 115 F. Supp.3d 268, 270 (D.P.R. 2015). Thus, if the Court were to find that perfect solidarity exists between DCH and third-party defendants, plaintiffs' letter to DCH would have also tolled the statute of limitations applicable to DCH's claims against third-party defendants.

However, as explained in all three of DCH's responses, the purported perfect solidarity between DCH and third-party defendants is based on the "indemnity" and "hold harmless" clause included in a professional services agreement executed by DCH and third-party defendants. **ECF Nos. 51** at 7-8, 4; **52** at 4, **53** at 10. Because the motions to dismiss under review are all grounded on Fed. R. Civ. P. 12(b)(6), the Court must examine the pleadings of this case to determine whether there are allegations that, under the plausibility test, demonstrate that perfect solidarity exists between DCH and third-party defendants.

**1. DCH failed to properly plead the existence of an agreement establishing perfect solidarity**

DCH's amended third-party complaint only has three paragraphs with allegations concerning a professional service agreement executed by third-party defendants. **ECF No. 28.** The totality of the allegations regarding this important aspect of the third-party claims are:

3.4 At all times relevant third-party Defendant Dr. Galán-Vázquez had an exclusive contract to provide anesthesia services at DCH[].

3.5 At all times relevant and pursuant to the Professional Service Agreement-Anesthesia, Dr. Galán-Vázquez would hire the nurse anesthetists at his own cost and expense.

3.6 At all times relevant and pursuant to the Professional Service Agreement-Anesthesia, Dr. Galán-Vázquez was responsible for the overall supervision of all employees of Anesthesia Services, including the anesthesiologists. **ECF No. 28** at 5.

Taking these allegations as true for purposes of the Fed. R. Civ. P. 12(b)(6) test, the Court cannot find any allegations therein standing for the proposition that "Galope and/or Dr. Galán were contractually obligated to **hold harmless and indemnify** [DCH] on account of personal injuries, including death which result from the Contractor's negligence and/or that of its employees, independent contractors and/or physicians." **ECF Nos. 51** at 2, 4; **52** at 12-13, **53** at 4 (emphasis added). A review of the entire amended third-party complaint forces the Court to hold that there are no allegations whatsoever regarding an agreement of indemnity or a duty to hold harmless between third-party defendants and DCH, much less are there allegations enough to survive the plausibility test under Fed. R. Civ. P. 12(b)(6) in connection with DCH's perfect solidarity argument.

Moreover, that a professional service agreement may have been in effect between DCH and third-party defendants is not enough to implicate "perfect solidarity" liability between the parties to the agreement. According to Article 1090 of the Puerto Rico Civil Code, PR Laws Ann. tit 31 Sec. 3101, an obligation cannot be considered "in solidum" "unless such an intention clearly appears in the instrument." *Rosario v. Sandoval*, 60 P.R.R. 401, 403 (1942). "Due to the opportunity that the parties have to determine the scope of their relationship, Art. 1090... specifies that when two or more debtors concur in a single obligation, their liability is presumed to be joint, being

joint and several only when expressly agreed to be so." *Maldonado-Rivera v Suárez*, 2016 PR Sup.

LEXIS 43 **; 2016 TSPR 57 at 14, certified translation at **ECF No. 45-1** (emphasis added).

Thus, contrary to the arguments raised in DCH's responses to the motions to dismiss,

nothing in its amended third-party complaint, or any other pleading in this case for that matter,

states that third-party defendants agreed to indemnify, hold harmless, or otherwise establish a

"perfect solidarity" bond with DCH. Moreover, pursuant to Puerto Rico law, the Court must

generally assume that the relationship between the parties to an agreement is not of the joint and

several type. *See Meléndez-Lebrón v. Rodríguez-Casiano*, 2020 TSPR 08, 2020 WL 703833 (P.R. 2020)

certified translation at **ECF No. 47-1** (citing *Quilez-Velar v. Ox Bodies, Inc.*, 2017 TSPR 165, 198

D.P.R. 1079 (2017) ("as with *any other contract*, joint and several liability is not presumed.")

## 2. DCH failed to submit the agreement

Additionally, the Court notes that the agreement was not attached to DCH's amended

third-party complaint or otherwise submitted by any party until DCH appended it to its

responses in opposition to the motions to dismiss. **ECF Nos. 11, 25, 28**. This omission seems

unreasonable considering that, according to DCH's response at **ECF No. 51**, the agreement is

both the source and evidence in support of DCH's theory of perfect solidarity and, as such, the

reason why DCH is allowed to file third-party claims outside of the one-year statute of

limitation.[4] DCH's request for the Court to accept and consider the professional service

---

[4] As a party to the professional service agreement, DCH knew of its existence and content years before submitting it to the Court. In fact, the Court notes that DCH chose to wait ten months to docket the professional service agreement for the first time.

agreement it withheld from the Court all these months is denied for several reasons. First, the Court is not inclined to consider the agreement at this procedural stage because DCH's amended third-party complaint at **ECF No. 28** does not "discuss the Agreement at considerable length," nor does it "summarize the parts of the Agreement that, in [DCH]'s view, justify" DCH's characterization of the "perfect solidarity" relationship between DCH and third-party defendants. *See Beddall v. State St. Bank and Tr. Co.*, 137 F.3d 12, 16 (1st Cir. 1998). Contrary to the reasons that led the *Beddall* court to consider a document not appended to the pleading, here, DCH's amended third-party complaint does not mention any agreement between DCH and third-party defendants for "solidarity," "indemnity" or to "hold harmless."

Second, instead of simply asking the Court to evaluate the professional services agreement in light of the allegations in its operative pleading, DCH asks the Court to insert a substantial amount of new allegations in the amended third-party complaint by reading all through the agreements' terms and conditions.

### 3. Perfect solidarity in the context of a physician-hospital relationship

DCH also perfunctorily raised the argument, though in only one of its responses in opposition,[5] that other Courts within this district have held that "perfect solidarity exists between a physician and a hospital, where the former is an employee of the latter or when a patient seeks treatment directly from a hospital and the hospital provides the physician who provides the treatment." **ECF No. 52** at 12. In support of this rather simplistic assertion, DCH

---

[5] Despite the fact that all three responses are very similar, DCH only raised this argument at **ECF No. 52** at 12.

cites *Ramírez-Ortiz v. Corporación Del Centro Cardiovascular De Puerto Rico y Del Caribe*, 994 F. Supp. 2d 218 (D.P.R. 2014) and *Kenyon v. González-Del Río*, 115 F. Supp.3d 268 (D.P.R. 2015). The Court is not convinced.

In *Kenyon*, citing *Ramírez-Ortiz*, the Court denied a motion for summary judgment because genuine disputes existed "as to whether [the physician] was an employee" of the hospital and if he was also assigned to treat the patient. Here, however, DCH admits that third-party defendants were not its employees, instead DCH claims they were hired under a professional service agreement.

In *Ramírez-Ortiz* the issue was whether or not plaintiff's tolling of the statute of limitation against a physician automatically interrupted the statute of limitation against the hospital, which was not originally included as a party to the action. Pursuant to Article 1803 of the Puerto Rico Civil Code, the Court in *Ramírez-Ortiz* found that "a perfect solidarity obligation arises in medical malpractice cases where a hospital and physician are jointly liable for a physician's negligent care pursuant to article 1803's vicarious liability doctrine." *Id*. Here, however, the issue is backwards: plaintiff sued the hospital and the hospital then sued the physician. Because Article 1803 does not hold the employee liable for the employer's negligence,[6] the case at hand falls outside the scope of Article 1803 and *Ramírez-Ortiz.*

---

[6] Article 1803 levies extracontractual liability upon the "owner… of an establishment… for the damages caused by their employees," PR Laws Ann. tit. 31 § 5142

Although the parties did not address this particular issue with the depth it deserves, the Court cannot turn its back on the fact that several other Courts within this district have interpreted *Ramírez-Ortiz* as holding that a perfect solidarity obligation automatically arises in medical malpractice cases where a hospital and physician are jointly liable for a physician's negligent care. *See Calderón Amézquita v. Rivera-Cruz*, 483 F. Supp. 3d 89, 106 (D.P.R. 2020); *González-Morales v. Presbyterian Cmty. Hosp., Inc.*, Civil No. 13-1906 (PG), 2017 WL 212234 (D.P.R. 2017)(collecting cases). *See also Rodríguez v. Grupo Hima-San Pablo*, CV 15-1278 (SEC), 2016 WL 5678135, at *2 (D.P.R. Sept. 30, 2016)("the Court need not decide whether the rule established in *Kenyon* is correct").

However, DCH's argument is in fact inapposite to *Fraguada-Bonilla*. In that case, plaintiffs filed a complaint for medical malpractice against a hospital and several physicians as joint tortfeasors. Six years after, plaintiffs moved for leave to file an amended complaint to include two additional physicians as joint tortfeasors. The court granted leave. One of the newly added physicians, Dr. Mestre-Morera, moved for summary judgment claiming that the complaint against him was time barred. Both the Puerto Rico Court of First Instance and Court of Appeals denied the motion for summary judgment pursuant to precedent in *Arroyo v. Hosp. La Concepción*, P.R. Offic. Trans., 1992 WL 755630 (P.R. June 5, 1992). The Puerto Rico Supreme Court, however, abrogated *Arroyo* and adopted the rule of imperfect solidarity for tort claims discussed above. *See* **ECF No. 45-1** at 10.

Notably, the Puerto Rico Supreme Court explicitly held that the *Fraguada-Bonilla* plaintiffs "should have" made a claim against Dr. Mestre-Morera individually as an alleged joint tortfeasor within the one-year statute of limitations.[7] In other words, the Puerto Rico Supreme Court in *Fraguada-Bonilla* found that, under the new rule of law adopted therein, plaintiffs' malpractice tort action against a joint tortfeasor physician was time barred despite the fact that plaintiffs tolled the statute of limitations against the hospital by filing a timely complaint.

Much like in *Fraguada-Bonilla*, here, plaintiffs filed the complaint and the amended complaint only against DCH. Years later, DCH filed a third-party complaint against third-party defendants physicians as alleged joint tortfeasors. Following the reasoning in *Fraguada-Bonilla*, this Court must conclude that the claims (by plaintiffs or third-party plaintiff)[8] against the physicians filed outside the one-year statute of limitations are time barred.

Accordingly, DCH's arguments of perfect solidarity is unavailing and rejected. Having concluded that perfect solidarity was not adequately pleaded by DCH, plaintiffs' tolling of the statute of limitations for their medical malpractice-related claims against DCH did not necessarily toll the statute of limitations as to DCH's related contribution claims against the third-party defendants.

---

[7] However, considering the fact that plaintiffs relied in the long-standing precedent in *Arroyo*, the Puerto Rico Supreme Court decided to make its ruling prospective.

[8] As discussed elsewhere in this Opinion and Order, pursuant to recent Puerto Rico Supreme Court precedent in *Maldonado-Rivera v Suárez*, 2016 PR Sup. LEXIS 43 **; 2016 TSPR 57 at 14, certified translation at **ECF No. 45-1**, *Fraguada-Bonilla* also applies in third-party claims context.

**B.     Plaintiffs did not toll the statute of limitations against third-party defendants regarding damages accrued from May 26, 2017 to January 21, 2019**

According to the motion practice and the pleadings in this case, there are three essential facts that are undisputed as it pertains to the pending motions to dismiss' time bar arguments. First, third-party defendants assert, and DCH does not contest, that plaintiffs only tolled the one-year statute of limitations against DCH with a demand letter sent on May 24, 2018; prior to the filing of plaintiffs' complaint.[9] However, the same is not true for third-party defendants, who came to know of the alleged claims for damages for the first time through DCH's third-party complaint filed years after the "initial injury." Neither is there any dispute as to the fact that plaintiffs' complaint at **ECF No. 1** and amended complaint at **ECF No. 11** are completely devoid of any specific claim against any of the third-party defendants. Thus, there is nothing on the record that would allow the Court to hold that the statute of limitations for the damages sought by plaintiffs as alleged in the original complaint  at **ECF No. 1** (*i.e.* damages sustained by plaintiffs prior to Marissa Tonge-Landrón's death) was tolled as to third-party defendants. In fact, plaintiffs make no mention whatsoever of third-party defendants in the original complaint or in the amended complaint at **ECF No. 11**.

Finally, for purposes of this Order, May 26, 2017 is the date in which the Puerto Rico one-year statute of limitations began to run with regard to plaintiffs' "medical malpractice claim" and resulting damages. DCH concedes this point, and further avers that May 26, 2017 is the date

---

[9] DCH does not contests that plaintiffs' demand letter contains all necessary requirements under Puerto Rico law to constitute a valid extrajudicial claim.

of the "initial injury"[10] in connection with plaintiffs' medical malpractice claims. However, DCH dismisses the importance of this date under the contention that the "initial injury" is not the relevant incident for the statute of limitations calculation.

Notably, DCH recognizes a distinction between the cause of action to recover damages suffered by plaintiffs resulting from Marissa Tonge-Landrón's "initial injury" on May 26, 2017, and the wrongful death cause of action[11] triggered by Marissa Tonge-Landrón's death on January 21, 2019. To that end, DCH states that "as a factual and legal matter, the date of accrual for Plaintiffs' **wrongful death action** is January 21, 2019, which is the date on which [Marissa Tonge-Landrón] died as a result of the alleged medical malpractice, which allegedly commenced during May [26], 2017." **ECF No. 53** at 7 (emphasis added).

By dismissing the importance of the May 26, 2017 date for purposes of the statute of limitation, DCH failed to present any argument or factual allegation against third-party defendants' time bar argument as it pertains to plaintiffs' damages suffered and accrued *before* the death of Marissa Tonge-Landrón.[12] These damages are clearly stated and claimed by plaintiffs in both the complaint and the amended complaint . *See* **ECF Nos. 1, 11**.[13]

---

[10] **ECF Nos. 51** at 1, **52** at 1, **53** at 1.

[11] "The wrongful death claim included new claims which did not exist until the moment of the decedent's death." **ECF No. 53** at 9. The unlawful death or wrongful death tort cause of action under Puerto Rico has two different modalities. "[O]ne is the personal action of the original victim of the accident for the damages that the same suffered; and the other, the action which corresponds exclusively and by own right to the deceased's close relatives for the damages the death of their predecessor caused them." *Cason v. Puerto Rico Elec. Power Authority*, 770 F. 3d 971, 974-975 (1st Cir. 2014).

[12] Notably, plaintiffs did not file any motion in response to the motions to dismiss filed by third-party defendants.

[13] "The neurological injuries suffered by Ms. Marissa Tonge Landrón… Aixa Rosa-Tonge… has been and will forever be deprived from sharing a normal life with her mother," **ECF No. 1** at 8, (ii) "[d]ue to the neurological

Accordingly, because plaintiffs did not send an "extrajudicial claim" to third-party defendants, any claim against third-party defendants for damages related to the period of time encompassing May 26, 2017 through January 21, 2019 is, thus, clearly time barred. The same holds true for DCH's third-party claims asserted under the Fed. R. Civ. P. 14(a).

## C. DCH's third-party claims regarding damages accrued from May 26, 2017 to January 21, 2019 are also time barred

DCH avers that the amended third-party complaint "serve[s] as the factual and legal predicate[] for [DCH's] claims that [Third-party defendants] are potential joint tortfeasors which caused and/or contributed to Plaintiffs' damages, **and are responsible to [DCH] for any damages it may be required to pay**" to plaintiffs. **ECF No. 53** at 6 (emphasis added). Moreover, DCH labels its claims against third-party defendants as claims under the "substantive right of contribution between joint tortfeasors," brought pursuant to Fed. R. Civ. P. 14(a). *Id*. at 7; **ECF No. 52** at 9-11. Therefore, the Court is called upon to determine whether DCH, as third-party plaintiff, can file a third-party complaint against alleged joint tortfeasors even though plaintiffs' claims against such third-parties are time barred.

As a court sitting in diversity and applying state law as to the statute of limitations issues herein,[14] the Court is "bound by [the] current interpretation of that law formulated by the state's

---

injuries suffered by Ms. Marissa Tonge Landrón, [her] younger sister, Hilda Tonge-Landrón… has been and will forever be deprived from sharing a normal life with her sister," *Id*. at 9, and, (iii) "[d]ue to the neurological injuries suffered by Ms. Marissa Tonge-Landrón, [her] oldest brother, Jorge Tonge-Landrón, since age 53, has been and will forever be deprived from sharing a normal life with his sister." *Id*. at 10.

[14] In diversity tort actions, the statute of limitations is substantive law for which Puerto Rico law controls. *See Erie v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945); *Daigle v. Maine Medical Center*, 14 F.3d 684, 689 (1st Cir. 1994).

highest tribunal." *Daigle v. Maine Med. Ctr., Inc.*, 14 F.3d 684, 689 (1st Cir. 1994) (citing

*Commissioner v. Estate of Bosch*, 387 U.S. 456, 464–65 (1967)). The Puerto Rico Supreme Court

recently addressed this specific issue with regards to third-party plaintiff's so-called

"contributory" actions filed against a potential joint tortfeasor. The Puerto Rico Supreme Court

held:

> **if the injured party's claim against a certain co-defendant has expired**, none of
> the defendants who were sued in a timely manner may bring him/her to the
> lawsuit to respond to the injured party. As the cause of action has expired in
> his/her favor, that co-defendant is not liable to the injured party. Art. 1830 of the
> Civil Code, 31 L.P.R.A. sec. 5241.23 Likewise, **the sued co-defendants cannot, by
> means of a third-party claim, file a contingent contribution claim against them
> because, when the right of the injured party to claim liability from that co-
> defendant ceases, the obligation for the other co-defendants to respond for the
> former's part in the damages also ceases**.

> *Maldonado-Rivera v. Suárez*, 2016 PR Sup. LEXIS 43 **; 2016 TSPR 57 at 14, certified

translation at **ECF No. 45-1** (emphasis added). The Puerto Rico Supreme Court further

explained that:

> **a sued co-defendant cannot bring to the litigation through a third-party claim
> an alleged jointly and severally liable co-defendant with respect to whom the
> cause of action of the injured party has expired**. If the cause of action has expired
> in his/her favor, this alleged co-defendant is not liable to the injured party or,
> through a contribution claim, to the sued co-defendants. 'The expiration of the
> statute of limitations constitutes a form of extinction of a right due to the inertia in
> exercising such right by its holder, for a determined period of time.'"

> *Id*. (internal citations omitted).

_____

Thus, according to the Puerto Rico Supreme Court opinion cited above, DCH's claims against third-party defendants for "contribution" as to plaintiffs' damages accrued between May 26, 2017 and January 21, 2019 are also time barred. In the Puerto Rico Supreme Court's words, the cause of action was "extinct" before DCH filed its third-party complaint. Accordingly, both plaintiffs' potential tort claims as well DCH's third-party claims for "contribution" against third-party defendants related to potentially negligent conduct between March 26, 2017 and January 21, 2019 are time barred.

### D.     Wrongful death cause of action

As discussed before, the focal point of DCH's responses in opposition to dismissal is that "the inclusion of the wrongful death claim gave rise to a new limitations clock on Plaintiffs' wrongful-death action, which began to run on the date of their injury, that is on January 21, 2019 - the date of [Marissa] Tonge[-Landrón]'s death." *Id*. Third-party defendants argued in reply that the amended complaint "did not include any allegations and facts to establish a wrongful death claim for personal damages suffered by decedent's relatives stemming from the decedent's death." **ECF No. 55-1** at 8; **ECF No. 56**. For the following reasons, the Court disagrees with third-party defendants' interpretation of the amended complaint as to the plausibility of a claim under the wrongful death cause of action.

Under Puerto Rico law, a tort claim for wrongful or unlawful death is cognizable under Article 1802 of the Puerto Rico Civil Code. PR Law Ann. tit. 31 § 5141. There are two modalities available under this cause of action recognized by the Puerto Rico Supreme Court:

The first is the victim's personal action for damages experienced by [the injured party] prior to death and caused by the negligent or intentional act or omission of another person[]…. This action is known as a 'survivorship action.'

The second type of tort action recognized under Article 1802 of the Puerto Rico Civil Code is the personal action that corresponds exclusively and by own right to the decedent's relatives or any individual who personally suffers damages by virtue of the decedent's death, regardless of status as an heir. *Cason v. Puerto Rico Elec. Power Authority*, 770 F. 3d 971, 974-975 (1st Cir. 2014) (citing *Widow of Delgado,* 1 P.R. Offic. Trans. 823, 825 (1973) (internal citations omitted).

As to the survivorship claim, "Puerto Rico law provides that a decedent's claim for tortiously inflicted pain and suffering sustained by the decedent prior to death can be transmitted to her heirs." *Montalvo v. González-Amparo*, 587 F.3d 43, 47 (1st Cir. 2009). However, this action is not unlimited. Puerto Rico law provides specific limitations to this inherited cause of action. Specifically, Article 41 of Puerto Rico's Code of Civil Procedure provides:

If a person entitled to bring an action dies before the expiration of the term limited for the commencement thereof, and the cause of action survives, an action may be commenced by his representatives, after the expiration of that time, and within one year of his death. PR Law Ann. tit. 32 § 255.

Thus, the availability of the survivorship claim is limited to cases where the original injured party passed away *before* the expiration of the statute of limitations which originates from the initial injury subject to the parameters of the cognitive doctrine.[15] Only then, the corresponding inherited action may be initiated by his or her representatives within one year of his or her death.

---

[15] The cognitive doctrine is not an issue in the case at hand and thus it is unnecessary for the Court to address it.

As to the second cause of action under the wrongful death doctrine, the action corresponds exclusively and by its own right to the decedent's relatives or any individual who personally suffers damages by virtue of the decedent's death. *Cason v. Puerto Rico Elec. Power Authority*, 770 F.3d at 974-975. The Court now turns to the allegations in the amended complaint to evaluate whether the well-pled allegations state a claim under the wrongful death doctrine. Importantly here, these causes of action for wrongful death, "arise at the time of death." *Arturet Vélez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 14 (1st Cir. 2005). Thus, even if the claims for damages or claims for contribution among joint tortfeasors that may have accrued between May 26, 2017, to January 21, 2019, are time barred, as discussed above, Marissa Tonge-Landrón's death triggered a new statute of limitation for claims under the wrongful death doctrine. Thus, the Court must now evaluate whether or not plaintiffs' amended complaint did in fact assert a plausible claim under the wrongful death doctrine.

In their amended complaint, plaintiffs claim that Marissa Tonge-Landrón's death was "precipitated by and was the direct, proximate result and consequence of the irreversible, deteriorated neurological condition which resulted from the medical malpractice inflicted upon her at DCH." **ECF No. 11** at 7-8. Plaintiff Aixa Rosa-Tonge alleged that her mother's death made her "fall into a deeper depression," and that she "inherits" a participation in her mother's cause of action filed at *Tonge-Landrón v. Doctors Center Hospital San Juan, Inc.*, et al, 19-1061 (DRD).[16]

---

[16] Because Marissa Tonge-Landrón's action for damages was filed in a separate case in this District, 19-1061 (DRD), the Court will not address any arguments pertaining to the survivorship claim herein.

Among the amended complaint's more salient assertions, plaintiffs asserted that Marissa Tonge-Landrón's injuries deprived plaintiffs of her love, support, and counsel, while her "untimely" death brought an "overbearing emotional and psychological suffering and state of depression." *Id*.

Based on these allegations, Aixa Rosa-Tonge's requested damages for Marissa Tonge-Landrón's death in addition to the damages requested in the original complaint for the damages accrued between May 26, 2017 and January 21, 2019, which raised to total amount requested in the original complaint at **ECF No. 1** to no less than $400,000.00 and $500,000.00. Similarly, plaintiffs Hilda Tonge-Landrón and Jorge Tonge-Landrón also claim to have suffered deeper depression and other damages in connection with Marissa Tonge-Landrón's death and request damages in excess of what they claimed in the original complaint at **ECF No. 1**. *See* **ECF No. 11**.

Accordingly, third-party defendants' argument claiming that the amended complaint does not include allegations for a wrongful death action are unavailing. **ECF No. 54-1** at 3-4, **55-1** at 8. Evidently, considering that Marissa Tonge-Landrón's death is allegedly the direct result of the "initial injury," the allegations of the amended complaint are related to, and, for the most part, are the same as the allegations in the original complaint at **ECF No. 1**. That does not mean, however, that the amended complaint at **ECF No. 11** fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6).

Accordingly, considering that the third-party Complaint was filed within a year of Marissa Tonge-Landrón's death, DCH's claims for contribution against third-party defendants,

with the exception of Dr. Jorge López, cannot be ruled out and dismissed as time barred at this stage of the proceedings.

**D.      Dr. Jorge López's motion to dismiss**

Third-party defendant Dr. Jorge López raised an additional and unique argument for dismissal of the wrongful death cause of action. **ECF No. 46**. He argues that contrary to the other third-party defendants, he was not included as a third-party defendant until *February 26, 2020*. **ECF No. 28**. That is, Dr. Jorge López was included as third-party defendant after the one-year statute of limitation applicable to the wrongful death cause of action had elapsed. *Id*. Indeed, a review of the record corroborates that plaintiffs never filed a claim, judicial or extrajudicial, against Dr. Jorge López after the death of Marissa Tonge-Landrón on January 21, 2019. The record also shows that DCH did not include Dr. Jorge López as a third-party defendant on November 18, 2019, when DCH first moved for leave to file its third-party complaint. **ECF Nos. 25, 25-1**. It was not until DCH filed its amended third-party complaint on *February 26, 2020*, that Dr. Jorge López was finally included in this action as a third-party defendant.

Because there is no dispute that the wrongful death statute of limitation expired one year after Marissa Tonge-Landrón's death on January 21, 2019, the Court finds that any claim against Dr. Jorge López for damages or for contribution among joint tortfeasors related to Marissa Tonge-Landrón's wrongful death is time barred. As recently held by the Puerto Rico Supreme Court, a defendant:

cannot bring to the litigation through a third-party claim an alleged jointly and severally liable co-defendant with respect to whom the cause of action of the injured party has expired. **If the cause of action has expired in his/her favor, this alleged co-defendant is not liable to the injured party or, through a contribution claim, to the sued co-defendants**. 'The expiration of the statute of limitations constitutes a form of extinction of a right due to the inertia in exercising such right by its holder, for a determined period of time.'" *See Maldonado-Rivera v. Suárez*, 2016 PR Sup. LEXIS 43 **; 2016 TSPR 57 at 40, certified translation at **ECF No. 45-1** (emphasis added) (internal citations omitted).

Because the Court is bound by the interpretation of the Puerto Rico Supreme Court on this particular state law issue, *see Daigle v. Maine Med. Ctr., Inc.*, 14 F.3d 684, 689 (1st Cir. 1994) (citing *Commissioner v. Estate of Bosch,* 387 U.S. 456, 464–65 (1967)), Dr. Jorge López's motion to dismiss at **ECF No. 46** is **GRANTED**.

## E.    DCH's lack of standing to file a third-party claim against the third-party defendants' insurer under Fed. R. Civ. P. 14(a)

In addition to the time bar argument, CCC raises an argument under Fed. R. Civ. P. 14(a) and the Puerto Rico Insurance Code. **ECF No. 47**. CCC argues that DCH has no standing or right to file a third-party complaint against it because "CCC is not a joint tortfeasor to the action and has no contractual relation with [DCH]." *Id*. at 2. The non-joint tortfeasor status, CCC asserts, is self-evident from the terms and conditions of the insurance policy covering the third-party defendants in this action. Because CCC did not explicitly agree to a "solidary" relationship with the insured party in the insurance policy, CCC contends that DCH lacks a substantive right for "contribution" or any other substantive right which is required under Fed. R. Civ. P. 14(a). *Id*.

Generally, in tort cases, challenges to a third-party complaint arise in situations where the third-party defendant is an alleged joint tortfeasor. In such scenarios, because "the applicable state law permits contribution among joint tortfeasors, regardless of whether the plaintiff has sued them all in the first instance," a third-party complaint or impleader is proper. *United States v. Gov't Dev. Bank,* 132 F.R.D. 129, 131 (D.P.R.1990) (citations omitted). Moreover, in such cases, it is commonly reiterated that "not only does Puerto Rico law recognize a general right of contribution among joint tortfeasors…[,] but Article 1802 itself specifically contemplates that liability for an entity's misconduct might be reduced by the concurrent misconduct of others." *Arroyo-López v. Hosp. Dr. Domínguez, Inc*., 262 F.R.D. 93, 95–96 (D.P.R. 2009) (internal quotations omitted); *see* P.R. Laws Ann. tit. 31 § 5141 (2006) ("Concurrent imprudence of the party aggrieved does not exempt [defendant] from liability but entails a reduction of the indemnity.").

Here, however, the Court is presented with a rather exceptional challenge. CCC argues that the amended third-party complaint fails to state a claim that would warrant relief under Fed. R. Civ. P. 14(a) because: (i) DCH is not the injured party, (ii) CCC is not a joint tortfeasor, (iii) nor did it consent to share a solidary liability with its insureds, and, finally, (iv) it has no contractual relationship with third-party plaintiff DCH.

### 1. Fed. R. Civ. P. 14(a)

"[I]n determining whether a third-party complaint was properly brought under Rule 14, a court looks to whether the pleadings provide a basis for a third-party defendant's liability to the defendant/third-party plaintiff." *Arroyo-López v. Hosp. Dr. Domínguez, Inc*., 262 F.R.D. 93, 95–

96 (D.P.R. 2009) (citing 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1446 (Supp.1989) (citations omitted).

Paragraphs 2.4 and 2.6 of the amended third-party complaint allege that CCC "had in full force and effect a professional liability insurance policy issued **in favor of third-party defendants**… to cover the negligent acts or omissions **of its insureds** such as the ones alleged in the instant third-party Complaint ." **ECF No. 28** at 3 (emphasis added). Paragraph 3.9 further alleges that CCC "is included as a third-party Defendant **to provide coverage to their respective insure[d]s** in the event it is determined that **they** incurred in negligent acts covered by **their** respective policies." *Id*. at 6 (emphasis added). There are no other allegations in connection with CCC in the amended third-party complaint. DCH argues that CCC "is contractually obligated to provide defense… and also to pay for any damages that its insureds become legally obligated to pay within the policy's limits." **ECF No. 51** at 8. As such, according to DCH, "CCC is included by virtue of the contractual agreement with its[] insureds for the provision of defense and indemnity," thus establishing a "direct line of liability." *Id*. 10.

The Court disagrees with DCH's interpretation and position as to the sufficiency of the allegations in the amended third-party complaint. Pursuant to the allegations in the amended third-party complaint, it is clear that DCH is not claiming a direct action against CCC. What DCH claims in its amended third-party complaint is simply that CCC is contractually compelled to provide "coverage" in favor of third-party defendants. On its face, the scarce allegations concerning the nature of DCH claims against CCC are insufficient to pass muster under Fed. R.

Civ. P 14(a) and 12(b)(6) since the amended third-party complaint contains practically no allegations as to DCH's claims against and relationship with CCC.

Similarly, the Court disagrees with DCH's arguments in its response at **ECF No. 51**. According to DCH's arguments, CCC is contractually bound to provide third-party defendants with defense in this action and to pay for damages for which third-party defendants may be liable. *Id*. Notably, DCH does not argue that CCC owes DCH a duty to provide for its defense nor does it assert that CCC is bound to pay DCH in case the Court finds DCH liable. Thus, DCH does not allege "a direct line of liability between itself and [CCC] independent of that between the original plaintiff and defendant," *Arroyo-López v. Hosp. Dr. Domínguez, Inc.*, 262 F.R.D. at 95, since DCH cannot obtain any judgment in its favor directly against CCC.

While recognizing that it is not a party to the insurance policy, DCH claims that even if the amended third-party complaint did not include CCC, it "would still have to provide defense and coverage **to its insureds**…. As such, CCC is included by virtue of the contractual agreement with its[] insureds for the provision of defense and indemnity." **ECF No. 51** at 9 (emphasis added). Once again, the Court fails to see any direct line of liability between CCC and DCH. Because these duties are nothing more than contractual obligations between CCC and third-party co-defendants, DCH[17] cannot assert that it has the right to force CCC to make payments to cover the costs associated with the defense of third-party defendants or to cover their liability in case of a Judgment. Certainly, Fed. R. Civ. P. 14(a) cannot be construed as a mechanism that

---

[17] DCH does not claim to be a beneficiary of the insurance policy.

surpasses the limits of substantive law by allowing DCH to seek compliance or enforcement of a contract executed by CCC and third-party defendants.

### 2. No joint and several liability between CCC and third-party defendants

DCH next argues that the relationship between the insurer and insured, for purposes of extracontractual claims, is akin to perfect solidarity. Citing *Tokyo Marine & Fire Ins. v. Pérez & Cia.*, 142 F.3d 1, 7 (1st Cir. 1998), DCH argues that "the First Circuit concluded that the Puerto Rico Supreme Court would hold that insured defendants and their insurance companies are solidarily liable for the acts of the insured up to the contractual limits of the policy issued." **ECF No. 51** at 9.[18]

Even if the Court decided to entertain these new allegations, which are nowhere to be found in the pleadings, DCH's arguments would still crumble. It is true that the First Circuit in *Tokyo Marine & Fire Ins. v. Pérez & Cia,* held that the liability for a tortfeasor and its insurer is solidary and thus the tolling of the statute of limitation against the insured automatically tolls the statute of limitation against the insurer. However, the facts before the *Tokyo Marine* Court were completely different from the facts in the case at bar. Furthermore, the legal grounds upon which the *Tokyo Marine* opinion was issued have changed drastically over the years.

*Tokyo Marine* addressed the statute of limitations issue from a very different factual perspective than the case at bar. In that case, *Tokyo Marine,* as subrogee of the injured party, sent

---

[18] DCH raised these contentions for the first time via response to the motion to dismiss. Nothing in the amended third-party complaint even suggests that CCC is a "joint tortfeasor" or that there is perfect solidarity between CCC and third-party Defendants.

a demand letter to the tortfeasor's insurer within the applicable statute of limitation. According to the First Circuit, the demand letter contained all requirements to effectively toll the statute of limitation against the insurance company, who was not included as a party to the suit. In that particular context, the First Circuit issued its decision holding that the insurer and insured were under a solidary relationship and thus, "the timely interruption of prescription as to [the insurer] had a like effect as to its insured." *Id*. at 10. Clearly, the facts of *Tokyo Marine* are nowhere near nor comparable to the facts in this case.

The grounds upon which *Tokyo Marine* was decided also changed. In *Tokyo Marine* the First Circuit noted that the Insurance Code of Puerto Rico "does not state explicitly that tortfeasors and their insurers are liable 'in solido,' which raises the possibility that the Puerto Rico Legislature did not intend to make them so." *Id*. at 7. Nonetheless, relying on the *ratio decidendi* of the Puerto Rico Supreme Court opinion in *Arroyo v. Hospital La Concepción*, the *Tokyo Marine* Court reasoned that "the Puerto Rico Supreme Court would hold that insured defendants and their insurance companies are solidarily liable for the acts of the insured." *Id*.

Admittedly, *Arroyo v. Hospital La Concepción* generated much discussion until abrogated by the Puerto Rico Supreme Court in *Fraguada-Bonilla v. Hospital Auxilio Mutuo*, 186 D.P.R. 365 (2012). As discussed before in this Opinion and Order, in *Fraguada-Bonilla v. Hospital Auxilio Mutuo*, the Puerto Rico Supreme Court distinguished between "perfect" and "imperfect" solidarity and held that "in actions for extracontractual damages, the wronged party must

individually toll the statute of limitations as to each solidary co-tortfeasor" because joint tortfeasors are under an "imperfect" solidarity. *Id*.

Four years after the opinion in *Fraguada-Bonilla* was issued, the Puerto Rico Supreme Court issued yet another opinion addressing the effects of *Fraguada-Bonilla,* this time in the context of third-party claims. As discussed before, in *Maldonado-Rivera v. Suárez*, 2016 PR Sup. LEXIS 43 **; 2016 TSPR 57, the Puerto Rico Supreme Court held that a defendant "cannot bring to the litigation through a third-party claim an alleged jointly and severally liable co-defendant with respect to whom the cause of action of the injured party has expired. If the cause of action has expired in his/her favor, this alleged co-defendant is not liable to the injured party or, through a contribution claim, to the sued co-defendants." *Id*. at 40, certified translation at **ECF No. 45-1** (internal citations omitted).

The Court is aware of the numerous decisions from state courts and courts within this District with several interpretations of the applicable Puerto Rico law, with respect to the nature of the relationship between an insurer and the insured. As a matter fact, in a plurality Judgment issued by the Puerto Rico Supreme Court on February 3, 2020, four Puerto Rico Supreme Court Justices recognized that "there are decisions of the United States Court of Appeals for the First Circuit and the United States District Court for the District of Puerto Rico which, interpreting decisions issued by this Court, have arrived at different and occasionally contradictory outcomes." *Meléndez-Lebrón v. Rodríguez-Casiano*, 2020 TSPR 08, 2020 WL 703833 (P.R. 2020) certified translation at **ECF No. 47-1**. The Puerto Rico Supreme Court specifically made reference

to "*Tokyo Marine & Fire Ins. Co. v. Pérez & Cía.*, 142 F.3d 1 (1st Cir. 1998); *Santiago-Rivera v. Royal Ins. Co. of Puerto Rico*, 613 F. Supp. 121 (D.P.R.), aff'd, 782 F.2d 1025 (1st Cir. 1985). *González-Morales v. Presbyterian Cmty. Hosp., Inc.*, No. CV 13-1906 (PG), 2017 U.S. Dist. LEXIS 7586, 2017 WL 212234, (D.P.R. Jan. 18, 2017); *Arroyo-Torres v. González-Méndez*, 212 F.Supp.3d 299 (D.P.R. 2016))."

Nonetheless, in *Meléndez-Lebrón v. Rodríguez-Casiano,* Puerto Rico Supreme Court Justice Rodríguez-Rodríguez joined by Justices Martínez-Torres, Kolthoff-Caraballo, and Feliberti-Cintrón, issued a Concurring Opinion holding that "**there isn't joint and several liability between an insured and an insurer**." *Id.* at 12 (emphasis added). Puerto Rico Supreme Court Justice Estrella-Martínez issued an Opinion concurring in part and dissenting in part, in which he also recognized that "an insurance company that agrees to be liable for the acts or omissions of an insured person is not jointly and severally liable, unless this is so agreed between the parties." *Id.* at 16. Notably, both the concurring and dissenting Opinions agree with Professor J. J. Álvarez-González's comments stating that the "Puerto Rico Insurance Code does not establish joint and several liability between insurer and insured." *See id.*, **ECF No 47-1** at 12, 23, 23.

Under the specific facts of this case and considering the recent developments in Puerto Rico law after the *Tokyo Marine* opinion was issued, the Court finds that DCH cannot log its third-party claims based on the premise that CCC and third-party defendants' have a "perfect solidarity" bond solely because of their insured-insurer relationship. As discussed before, in a recent plurality Opinion, five Justices of the Puerto Rico Supreme Court concurred as to the fact

that, unless explicitly agreed upon, there is no "joint and several liability between an insured and an insurer." *Id.*

Although not explicitly discussed by DCH, the Court would be remiss if it did not highlight yet another ground to support its conclusion denying a joint and several liability between insured and insurer absent an agreement of such nature. The case at bar presents a unique set of facts and circumstances[19] that has not been addressed by prior courts. To wit, here, third-party plaintiff is not the injured party nor the insured. Thus, third-party plaintiff DCH cannot assert the rights generally available to injured parties under the Insurance Code of Puerto Rico for a "direct action" against the insurer or the rights of the insured under the insurance policy.[20] Notably, DCH does not even claim to have a right to obtain or seek contribution or payment directly from CCC. Ultimately, DCH does not claim that CCC "is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." *Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 389, 393 (1st Cir. 1999)(quoting Fed. R. Civ. P. 14(a)).

Accordingly, the Court finds that DCH has failed to state a claim for relief under Fed. R. Civ. P. 14(a) and 12(b)(6) against CCC. Therefore, CCC's motion to dismiss at **ECF No. 47** is thus **GRANTED**.

---

[19] DCH did not reference any authority discussing the specific issues before the Court in this case.

[20] The Insurance Code further provides that an "individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy, which action he may exercise against the insurer only or against the insurer and the insured jointly." PR Laws Ann. tit. 26 § 2003(1). Because DCH is not an injured party with a right to file a "direct action," it is unnecessary for the Court to discuss this mechanism any further.

## IV.    CONCLUSION

In light of all the above, the Court hereby:

(i) **GRANTS** third-party defendant Dr. Jorge López's motion to dismiss at **ECF No. 46** and dismisses with prejudice DCH's amended third-party complaint **ECF No. 28** against Dr. Jorge López.

(ii) **GRANTS IN PART** third-party defendants' motions to dismiss at **ECF No. 45** and dismisses with prejudice DCH's amended third-party complaint **ECF No. 28** claims against third-party defendants as it pertains to plaintiffs' claims for damages accrued between May 26, 2017 and January 21, 2019.

(iii) **GRANTS** third-party Defendant CCC's motion to dismiss at **ECF No. 47** and dismisses with prejudice DCH's amended third-party complaint **ECF No. 28** against CCC.

(iv) Finally, the motions for leave to reply at **ECF Nos. 54, 55** are **GRANTED**. The motion for joinder at **ECF No. 56** is **NOTED**. The informative motions at **ECF Nos. 57, 61** are **NOTED**. The motions at **ECF Nos. 49** and **50** are **MOOT**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 31st day of March 2021.

                                        **S/AIDA M. DELGADO-COLÓN**
                                        **United States District Judge**